IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 26, 2013 Session[1]

**DAVID SCOTT BLACKWELL**
v.
**BILL HASLAM, GOVERNOR OF THE STATE OF TENNESSEE, IN HIS OFFICIAL
CAPACITY ONLY; ROBERT E. COOPER, JR., TENNESSEE ATTORNEY
GENERAL; VICTOR S. (TORRY) JOHNSON, III, DISTRICT ATTORNEY
GENERAL FOR THE 20TH JUDICIAL DISTRICT, IN HIS OFFICIAL CAPACITY
ONLY; KIM HELPER, DISTRICT ATTORNEY GENERAL FOR THE 21ST JUDICIAL
DISTRICT, IN HER OFFICIAL CAPACITY ONLY;
AND THE STATE OF TENNESSEE**

**An Appeal from the Chancery Court for Davidson County
No. 10-0739-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2012-01991-COA-R3-CV - Filed June 28, 2013**

---

This appeal involves the Full Faith and Credit Clause and firearm rights. The petitioner was convicted of felony drug offenses in Georgia. The State of Georgia granted the petitioner a full pardon for his crimes; his Georgia pardon expressly restored his right to possess a firearm. The petitioner now resides in Tennessee. A Tennessee statute provides that it is a felony for a person who has been convicted of a felony drug offense to possess a firearm, and it does not make an exception for persons who have been pardoned for their crime. The petitioner filed this declaratory judgment action against the State of Tennessee, seeking a declaration that, because he received a pardon for his drug offenses in Georgia, he can purchase or possess a firearm in Tennessee without violating the Tennessee statute. The trial court held in favor of the petitioner, concluding that the Full Faith and Credit Clause of the United States Constitution requires Tennessee to recognize Georgia's pardon in full and to permit the petitioner to carry a firearm in Tennessee. The State of Tennessee now appeals. On appeal, we consider the public-policy exception to the Full Faith and Credit Clause. We hold that Tennessee's public policy on the restoration of firearm rights for a convicted *non-violent* drug felon is not entirely inconsistent with Georgia's public policy, so the public-

---

[1]As discussed below, after oral argument in this cause, the parties were asked to submit supplemental briefs on the effect of an amendment to a pertinent Tennessee statute that was enacted after oral argument. The Court considered the appeal after the supplemental briefing was completed on June 18, 2013.

policy exception to full faith and credit is not applicable in that situation. However, Tennessee public policy proscribes the restoration of firearm rights for a convicted *violent* drug felon, contrary to Georgia's public policy allowing the restoration of firearm rights for all felons, violent or not. This Tennessee policy implicates public safety so as to warrant application of the public-policy exception to the Full Faith and Credit Clause under the appropriate circumstances. Therefore, we vacate the trial court's grant of judgment on the pleadings and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Vacated in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Robert E. Cooper, Jr., Attorney General & Reporter; William E. Young, Solicitor General; and Frank Borger-Gilligan, Assistant Attorney General, for the Respondents/Appellees, Bill Haslam, Governor of the State of Tennessee; Robert E. Cooper, Jr., Tennessee Attorney General; Victor S. (Torry) Johnson, III, District Attorney for the 20th Judicial District; Kim R. Helper, District Attorney for the 21st Judicial District; and the State of Tennessee

David L. Raybin and Benjamin K. Raybin, Nashville, Tennessee, for the Petitioner/Appellee, David Scott Blackwell

**OPINION**

This is the second appeal in this case. ***See Blackwell v. Haslam***, No. M2011-00588-COA-R3-CV, 2012 WL 113655 (Tenn. Ct. App. Jan. 11, 2012). In 1989, Petitioner/Appellee David Scott Blackwell was convicted of three felony drug offenses in the State of Georgia. The record does not reveal any details about the nature or circumstances of Mr. Blackwell's drug offenses. Mr. Blackwell was sentenced to nine years of incarceration; he served five years in prison and four years on probation.

In 2003, Mr. Blackwell received a full pardon for his crimes from the Georgia Board of Pardons and Paroles, which is authorized under the Georgia Constitution to grant pardons. Mr. Blackwell's pardon document, entitled "Pardon Including Restoration of the Right to Bear Arms," expressly restored Mr. Blackwell's firearm rights:

> ORDERED that all disabilities under Georgia law resulting from the above stated conviction(s) and sentence(s) . . . are hereby removed; and

ORDERED further that all civil and political rights, including the right to receive, possess, or transport in commerce a firearm, lost under Georgia law as a result of the above stated convictions, . . . are hereby restored.

In 2007, Mr. Blackwell moved to Tennessee. After doing so, he learned that Tennessee Code Annotated § 39-17-1307(b)(1)(B) makes it a felony for a person who has been "convicted of a felony involving the use or attempted use of force, violence or a deadly weapon" or who has been "convicted of a felony drug offense" to possess a firearm,[2] as that term is defined in Tennessee Code Annotated § 39-11-106.[3]

Mr. Blackwell wanted to own and possess a firearm and engage in lawful hunting activities in Tennessee, but he did not want to risk being charged with a felony under Tennessee Code Annotated § 39-17-1307(b)(1)(B). To ascertain whether his Georgia pardon and Georgia's restoration of his firearm rights exempted him from the application of Section 39-17-1307(b)(1)(B), Mr. Blackwell asked his Tennessee State Representative, Representative Glen Casada, to request a written opinion of the Attorney General of Tennessee. Representative Casada did so, and on October 29, 2009, the Attorney General issued an opinion that Tennessee Code Annotated § 39-17-1307(b)(1)(B) prohibits any person convicted of a felony drug offense from possessing a handgun, including a person who has received an out-of-state pardon.[4]

On April 29, 2010, Mr. Blackwell filed this declaratory judgment action in the Chancery Court for Davidson County, Tennessee, pursuant to Tennessee Code Annotated § 29-14-102 and 42 U.S.C. § 1983. In his complaint, Mr. Blackwell sought a declaration that the State's enforcement of the Tennessee statute prohibiting him from possessing a firearm in Tennessee would violate his rights under several provisions of the United States and Tennessee

---

[2]This statute has been revised over the years, but the revisions do not affect the analysis in this appeal unless noted herein.

[3]Tennessee Code Annotated § 39-11-106(11) defines a firearm as "any weapon designed, made or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use." Tenn. Code Ann. § 39-11-106(11) (Supp. 2012).

[4]The Attorney General opinion requested by Mr. Blackwell's state representative, dated October 20, 2009, apparently inadvertently analyzed the issue under Tennessee Code Annotated § 39-17-1307(b)(1) as it read prior to a 2008 amendment. *See* Tenn. Op. Atty. Gen. No. 09-168, 2009 WL 3479586 (Oct. 20, 2009). The previous version of the statute prohibited only the possession of "handguns." As such, the Attorney General's Opinion stated that a person convicted of a drug felony who has received an out-of-state pardon may possess a "long gun" but not a handgun. Effective July 1, 2008, Tennessee Code Annotated § 39-17-1307(b)(1) was amended to replace the term "handgun" with "firearm." *See* 2008 Tenn. Pub. Acts 1044-45. Our analysis in this appeal is with respect to all firearms, not just handguns.

-3-

constitutions, and that he may lawfully purchase and possess a firearm or handgun in the State of Tennessee. As defendants in the action, Mr. Blackwell named the State of Tennessee, the Governor of Tennessee, and the Tennessee Attorney General. He included in his complaint a request for an award of attorney fees for the violation of his constitutional rights pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

In July 2010, the defendants filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12.02(1) and (6) of the Tennessee Rules of Civil Procedure. They later filed an amended motion to dismiss. After that, Mr. Blackwell amended his complaint to add two additional defendants, the District Attorneys General for Davidson County, Tennessee, and Williamson County, Tennessee (hereinafter, we refer to the defendants collectively as "the State").[5]

In ruling on the State's motion, the trial court rejected the State's claim that the court lacked subject matter jurisdiction over the case, but it granted the State's motion to dismiss for failure to state a claim as to all defendants. Both Mr. Blackwell and the State appealed. On appeal, this Court affirmed the trial court's holding that it had subject matter jurisdiction, but it reversed the dismissal for failure to state a claim. The case was remanded for the State to file an answer and for consideration of the petition on the merits. *Id.* at *10.

On remand, the State filed an answer to Mr. Blackwell's complaint. It admitted all of the facts alleged in the complaint, and it specifically admitted that Mr. Blackwell was granted a pardon by the Georgia Board of Pardons and Paroles that included the restoration of his right to lawfully own and possess a firearm in Georgia. The State denied, however, that Mr. Blackwell was entitled to a declaration that Tennessee is required to recognize the Georgia restoration of Mr. Blackwell's firearm rights.

A few days later, Mr. Blackwell filed a motion for judgment on the pleadings pursuant to Rule 12.03 of the Tennessee Rules of Civil Procedure. He asserted that the parties' pleadings contain all of the necessary facts, that the pertinent facts are undisputed, and that he is entitled to a judgment as a matter of law on the undisputed facts. Mr. Blackwell claimed that Tennessee must recognize both his Georgia pardon and Georgia's restoration of his firearm rights; he relied on a number of provisions in the state and federal constitutions, namely, the Full Faith and Credit Clause of the United States Constitution, the right to bear arms in the Tennessee Constitution and the United States Constitution, and the Due Process Clause,

---

[5]The amended complaint named Phil Bredesen, the former Governor of Tennessee, as a defendant in his official capacity. Subsequently, Governor Bill Haslam was elected and has been appropriately substituted as the named defendant in this matter.

Equal Protection Clause, and Privileges and Immunities Clause of the United States Constitution.

The State filed its response to Mr. Blackwell's motion for judgment on the pleadings, and also filed its own motion for judgment on the pleadings. The State and Mr. Blackwell agreed that the pertinent facts are undisputed; each sought a judgment as a matter of law based on those undisputed facts. In short order, the trial court conducted a hearing in which both sides argued their respective motions for judgment on the pleadings.

On July 2, 2012, the trial court entered a memorandum and order, granting Mr. Blackwell the declaratory relief he sought. At the outset, the trial court noted that the facts as alleged by Mr. Blackwell were admitted as true by the State, and that the only issues presented were questions of law. It then observed that Tennessee is required under the Full Faith and Credit Clause of the United States Constitution to recognize the pardon Mr. Blackwell received from the State of Georgia, because it "explicitly restores his firearm rights." The trial court acknowledged that there is a "public policy" exception to the full-faith-and-credit requirement, that a forum state is not required to give full faith and credit to a foreign judgment if doing so would violate the forum state's strong public policy. The trial court rejected the State's argument that the public-policy exception to the Full Faith and Credit Clause applied in this case, because "there is no inconsistency between Tennessee and Georgia's public policies regarding pardons."

The trial court further held, however, that, "even if this Court is wrong on its foregoing analysis of the similarity of the policy informing pardons," the public-policy exception does not necessarily apply just because the forum state's law is different. The trial court cited as an example a case in which Tennessee enforced a foreign judgment for a gambling debt, even though gambling debts are unenforceable in Tennessee; it also cited a case in which a Tennessee court recognized a foreign court's approval of marriage by estoppel, even though Tennessee public policy prohibits application of the marriage by estoppel doctrine.[6] Ultimately, the trial court held that the public-policy exception to the Full Faith and Credit Clause does not apply in the instant case. The trial court summarized its reasoning as follows:

> [T]he Court has concluded as a matter of law that the Georgia pardon [Mr. Blackwell] received in this case — explicitly restoring his firearm rights — is not inconsistent with nor violative of Tennessee's public policy. . . . Tennessee has a statutory policy to restore civil disabilities upon receipt of a

---

[6]The cases that were cited by the trial court are *Boardwalk Regency Corp. v. Patterson*, No. M1999-02805-COA-R3-CV, 2001 WL 1613892, at *3 (Tenn. Ct. App. Dec. 18, 2001), and *Farnham v. Farnham*, 323 S.W.3d 129, 140 (Tenn. Ct. App. 2009).

pardon just as the Georgia pardon restores civil disabilities. . . . The Court's alternative conclusion is that, like with gambling debts or bigamous marriages, Tennessee shall extend full faith and credit in this case even if its laws and procedures are different. Accordingly, under either alternative the U.S. Constitution requires this Court to give full faith and credit to the Georgia pardon. When that is done, Tennessee Code Annotated section 39-17-1307(b)(1)(B) does not apply to disqualify [Mr. Blackwell] from possessing a firearm or purchasing one under section 39-17-1316(r)(1).

Therefore, the trial court held, "Tennessee must give full faith and credit to [Mr. Blackwell's] Georgia pardon, including restoration of rights of firearms possession." The trial court found that its decision "renders it unnecessary . . . to decide [Mr. Blackwell's] other theories regarding the inapplicability of sections 39-17-1307(b)(1)(B) and 39-17-1316(r)(1), and/or that they are unconstitutional." Accordingly, the trial court granted Mr. Blackwell's motion for judgment on the pleadings and denied the State's motion for judgment on the pleadings. It ordered the parties to brief the issue of whether Mr. Blackwell is entitled to attorney fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

After briefing on the issue of attorney fees, on August 17, 2012, the trial court entered an order awarding Mr. Blackwell $26,817.75 in attorney fees and $902.80 in expenses. The trial court cited 42 U.S.C. § 1988(b) as the basis for the attorney fee award:

> (b) Attorney's fees
>
> In any action or proceeding to enforce a provision of sections . . . 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .

42 U.S.C. § 1988(b). The trial court held that a prevailing party in a declaratory judgment action may qualify for "prevailing party" status. It further held that, even though it resolved the case without reaching Mr. Blackwell's constitutional claims, Mr. Blackwell was not precluded from the recovery of attorney fees "as the operative facts of the case concerned enforcement of [his] Second Amendment rights [to bear arms]." Therefore, because the fees requested were reasonable, the trial court held that Mr. Blackwell was entitled to an award of attorney fees and expenses.

The State now appeals the trial court's July 2, 2012 order granting Mr. Blackwell declaratory relief, and also the August 17, 2012 order granting Mr. Blackwell attorney fees and costs.[7]

## STANDARD OF REVIEW

The trial court granted Mr. Blackwell's motion for judgment on the pleadings pursuant to Rule 12.03 of the Tennessee Rules of Civil Procedure. Our standard of review for a trial court's grant of a Rule 12.03 motion for judgment on the pleadings is as follows:

> In reviewing a trial court's grant of judgment on the pleadings under Rule 12.03 of the Tennessee Rules of Civil Procedure, we construe the complaint in favor of the plaintiff "by taking all factual allegations in the complaint as true and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 352 n.1 (Tenn. 2008) (citing *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007); *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004)). Conclusions of law are not admitted and judgment on the pleadings should not be granted "unless the moving party is clearly entitled to judgment." *Cherokee Country Club, Inc.*, 152 S.W.3d at 470 (Tenn. 2004) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)). This determination is a question of law, and we review the trial court's conclusions of law *de novo* with no presumption of correctness. *Frye v. Blue Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)).

*Duffer v. Lawson*, No. M2009-01057-COA-R3-CV, 2010 WL 3488620, at *4 (Tenn. Ct. App. Sept. 3, 2010) (quoting *Harman v. Univ. of Tenn.*, No. E2009-02139-COA-R3-CV, 2010 WL 2432049, at *2 (Tenn. Ct. App. June 16, 2010)). Thus, under this standard, the relevant facts set forth in the pleadings are taken as true, and the issues presented are questions of law, which we review *de novo*.

---

[7]On October 15, 2012, the trial court entered an order denying the State's motion for a stay of the July 2, 2012 order granting Mr. Blackwell declaratory relief. However, it granted a stay as to the August 17, 2012 order awarding Mr. Blackwell attorney fees; Mr. Blackwell did not oppose a stay as to that order pending appeal.

**ANALYSIS**

**Full Faith and Credit Clause**

The Full Faith and Credit Clause of the United States Constitution states: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. Const. art. IV, § 1. Expounding on the Full Faith and Credit Clause, Chief Justice John Marshall stated:

> [T]he judgment of a state court should have the same credit, validity, and effect in every other court in the United States which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States.

*Hampton v. M'Connel*, 3 Wheat. 234, 16 U.S. 234, 4 L. Ed. 378 (1818). In the wake of *Hampton* and its progeny, "it is now well established that the full faith and credit clause of the federal constitution requires that the judgment of a state court, which had jurisdiction of the parties and the subject matter in suit, be given the same credit, validity and effect in the courts of every other state and that such judgment be equally conclusive upon the merits in the courts of the enforcing states." *Mirage Casino Hotel v. J. Roger Pearsall*, No. 02A01-9608-CV-00198, 1997 WL 275589, at *3 (Tenn. Ct. App. May 27, 1997). The Full Faith and Credit Clause of the federal Constitution was a key component of the Founding Fathers' efforts to form a unified nation, rather than simply a confederation of independent sovereign states:

> Full faith and credit embodies an important federal policy. It is designed to give the United States certain of the benefits of a unified nation. As stated by Mr. Justice Stone in *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 276-7 (1935):
>
> > "The very purpose of the full faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin."

Restatement (Second) of Conflict of Laws § 103 cmt. b (2012).

-8-

Notwithstanding the importance of the principle behind the constitutional provision, "the United States Supreme Court has recognized at least three exceptions to the full faith and credit clause." *Mirage Casino Hotel*, 1997 WL 275589, at \*4. Specifically, a forum state may decline to accord full faith and credit to the judgment or public act of another state if it is (1) void due to a lack of personal or subject matter jurisdiction, (2) based upon fraud, or (3) "where enforcement of the judgment would violate the public policy of the forum state." *Id.* (citations omitted). Tennessee courts have recognized and adopted all three of these exceptions. *See Four Seasons Gardening & Landscaping, Inc. v. Crouch*, 688 S.W.2d 439, 445 (Tenn. Ct. App. 1984); *In re Riggs*, 612 S.W.2d 461, 465 (Tenn. Ct. App. 1980).

In the case at bar, the focus is on exception number three, the so-called "public-policy exception" to the full faith and credit requirement. Under this exception, "Tennessee courts are not obligated to give full faith and credit to any judgment of a state which we hold to be violative of Tennessee's public policy or the Federal Constitution." *Seiller & Handmaker, LLP v. Finnell*, 165 S.W.3d 273, 276-77 (Tenn. Ct. App. 2004) (quoting *Aqua Sun Invs., Inc. v. Henson*, 1993 WL 382230, at \*2 (Tenn. Ct. App. Sept. 30, 1993)). The Restatement of Conflict of Laws describes the public-policy exception to the Full Faith and Credit Clause in the following manner:

> A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve an improper interference with important interests of the sister State.

Restatement (Second) of Conflict of Laws § 103 (2012). The public-policy exception recognizes: "Regard must be had in a federal nation for the needs of each individual State." *Id.* Therefore, although the principle of giving full faith and credit to the judgments of sister states will "almost invariably" outweigh the interest of an individual state, a forum state may decline to give full faith and credit to a sister state's judgment if doing so would be contrary to the forum state's fundamental interests:

> There will be extremely rare occasions . . . when recognition of a sister State judgment would require too large a sacrifice by a State of its interests in a matter with which it is primarily concerned. On these extremely rare occasions, the policy embodied in full faith and credit will give way before the national policy that requires protection of the dignity and of the fundamental interests of each individual State.

*Id.* § 103 cmt. b.

As observed by the trial court below, Tennessee courts have held that "a party who invokes the public policy exception must identify the public policy that is offended by the foreign judgment and has a 'stern and heavy' burden." *Finnell*, 165 S.W.3d at 277 (internal quotation marks omitted) (quoting *Aqua Sun Invs., Inc.*, 1993 WL 382230, at *2 (quoting *Biogen Distrib., Inc. v. Tanner*, 842 S.W.2d 253, 256 (Tenn. Ct. App. 1992))). "[T]he judgment of the court of another state does not necessarily violate the public policy of this State merely because the law upon which it is based is different from our law." *Four Seasons Gardening & Landscaping*, 688 S.W.2d at 445.

Public policy in Tennessee is found in Tennessee's "constitution, statutes, judicial decisions, and common law." *Finnell*, 165 S.W.3d at 277 (quoting *Alcazar v. Hayes*, 982 S.W.2d 845, 851 (Tenn. 1998)). Indeed, we look at these potential sources in roughly that order; the task of divining the State's public policy falls to the judicial branch only in the absence of definitive indication from the other branches of government: "Although the determination of public policy is primarily a function of the legislature, the judiciary may determine public policy in the absence of any constitutional or statutory declaration." *Id.* (quoting *Alcazar*, 982 S.W.2d at 851 (quoting *Crawford v. Buckner*, 839 S.W.2d 754, 759 (Tenn. 1992))).

## Arguments on Appeal

The State argues that the trial court erred in holding that "there is no inconsistency between Tennessee and Georgia's public policies regarding pardons," because the two states differ greatly in their policies toward the restoration of firearm rights to convicted felons and in their treatment of pardons. It asserts that, in Tennessee, a drug felon's firearm rights cannot be restored either by statute or by executive pardon, even if the pardon specifies that the felon's firearm rights are restored. Because the policies regarding the restoration of firearm rights differ so much, the State argues, Tennessee is not required to give effect to Georgia's restoration of Mr. Blackwell's firearm rights while he is in Tennessee.

On May 14, 2013, after oral argument in this appeal, the General Assembly enacted an amendment to Tennessee's expungement statute, Tennessee Code Annotated § 40-32-101. The amendment would permit "a person who was convicted of a non-violent crime" to have his record expunged and his firearm rights restored if he is pardoned for his non-violent crime. This amendment will be discussed in more detail below. The parties filed supplemental briefs on the impact of the 2013 amendment on the issues in this case. In its supplemental brief, the State conceded that, "when it becomes effective on July 1, 2013, [the expungement statute] will provide a means for some convicted felons to have their firearm rights restored." The State further stated, "With this change in public policy, Tennessee will be obligated, as of July 1, to honor Georgia's restoration of Petitioner's firearm rights under his Georgia pardon if Petitioner can establish that he would have been able to obtain

restoration of his firearm rights under" subsection (h) of the amended expungement statute. The State nevertheless maintains that, other than in this single instance, Tennessee public policy prohibits the restoration of a drug felon's firearm rights. The State therefore urges this Court to remand the case to the trial court so that Mr. Blackwell can show that the circumstances of his crime would be such that he would have likely been entitled to relief under the amended expungement statute.

For Mr. Blackwell's part, he continues to maintain that a Tennessee executive pardon that specifically restores a felon's firearm rights would have the effect of automatically restoring those rights, and that the trial court was correct in concluding that "Tennessee has a clear policy to restore civil disabilities upon receipt of a pardon," because "a full pardon restores one's civil rights." *State v. Blanchard*, 100 S.W.3d 226, 231 (Tenn. Ct. Crim. App. 2002). He further argues that any Tennessee statute that would purport to limit the power of the Governor of Tennessee to restore firearm rights through a specific provision in a pardon would violate the separation of powers clause of the Tennessee Constitution.

Addressing the 2013 amendment to the expungement statute noted above, Mr. Blackwell claims that the amendment bolsters his argument that the policies of Tennessee and Georgia on the restoration of firearm rights are consistent. In the alternative, Mr. Blackwell argues that, even if this Court is inclined to hold that Tennessee statutes as they were prior to the amendment express a public policy that precludes the restoration of firearm rights by an executive pardon, and that the statutes that evince such a policy are not unconstitutional, the newly-amended expungement statute expresses a *new* public policy to now make pardoned, non-violent felons eligible for expungement and for restoration of their firearm rights. He argues, "Because the remedies available to non-violent pardoned felons in Georgia and Tennessee are now 'similar' — even if not wholly 'identical' — this Court should adhere to its decision in *Four Seasons Gardening & Landscaping, Inc. v. Crouch*, [688 S.W.2d 439 (Tenn. Ct. App. 1984),] to apply Full Faith and Credit to Mr. Blackwell's pardon."

In determining whether the public-policy exception to full faith and credit applies in a given case, our first task is to identify the relevant public policies of Georgia and Tennessee. *See Finnell*, 165 S.W.3d at 277 (quoting *Aqua Sun Invs., Inc.*, 1993 WL 382230, at *2 (quoting *Biogen Distrib., Inc. v Tanner*, 842 S.W.2d 253, 256 (Tenn. Ct. App. 1992))). We then determine whether and to what extent the two states' policies conflict. If Tennessee's public policies do not conflict with those of Georgia, we need go no further and Tennessee must give full faith and credit to Georgia's restoration of Mr. Blackwell's firearm rights.[8] If they do conflict, we must then go on to determine whether Tennessee's interest in enforcing its

_____

[8]The State does not dispute that the Georgia pardon is an official act by the State of Georgia that is otherwise entitled to recognition under the Full Faith and Credit Clause.

-11-

own policies is so significant that it warrants Tennessee's refusal to extend full faith and credit to Georgia's restoration of Mr. Blackwell's firearm rights.

## Public Policy

The trial court determined that "Tennessee has a clear policy to restore civil disabilities upon receipt of a pardon" and held there was "no inconsistency between Tennessee and Georgia's public policies *regarding pardons*." (Emphasis added). This holding indicates that the trial court focused on the two states' public policies as to executive pardons only. As explained below, we view the public policy at issue differently. We perceive that the more important public policy at issue is each state's view of the restoration of firearm rights *for a convicted drug felon,* by executive pardon or otherwise.

### *Georgia*

The pardon Mr. Blackwell received from the State of Georgia expressly removed "all disabilities under Georgia law resulting from" his conviction, and restored "all civil and political rights, including the right to receive, possess, or transport in commerce a firearm, lost under Georgia law." The effect of an executive order restoring a felon's firearm rights in Georgia was discussed at length by the Georgia Supreme Court in the recent case of ***Ferguson v. Perry***.[9] ***See Ferguson v. Perry***, 740 S.E.2d 598 (Ga. 2013).

In ***Ferguson,*** the plaintiff was convicted of violating federal liquor tax laws, which resulted in the removal of his federal and state firearm rights. ***Id.*** at 600. In 1979, after the plaintiff was released from prison, the Georgia Board of Pardons and Paroles granted the plaintiff's petition for restoration of his state firearm rights. The Board did not pardon the plaintiff's conviction, because his conviction was in federal court. However, it issued an executive order based upon "the constitutional . . . authority vested in this Board to remove disabilities imposed by law." The 1979 Board order provided that "all disabilities resulting from [the plaintiff's] sentences(s) be . . . removed" and "all civil and political rights lost as a result of [his] offense(s) be . . . restored." ***Id.***

Thirty years later, the plaintiff in ***Ferguson*** petitioned the Georgia probate court for a firearms permit in Georgia. The probate court denied his petition. ***Id.*** at 601. The plaintiff then filed a lawsuit against the probate court judge, seeking declaratory relief and a writ of mandamus. The plaintiff argued that he had met all the requirements for obtaining a firearms permit, and that the probate court judge did not have the authority to ignore the 1979 order

---

[9] ***Ferguson v. Perry*** was decided after the parties' appellate briefs were filed in this case and the day before oral argument of the appeal.

of the Board of Pardons and Paroles. The trial court granted the relief requested; it issued a writ of mandamus directing the probate court judge to issue a firearms permit to the plaintiff. *Id.* The probate court judge appealed, ultimately to the Georgia Supreme Court.

On appeal in *Ferguson*, the probate court judge argued that the writ of mandamus was issued in error, because the plaintiff's firearm rights were not restored through either a pardon or through the procedure set forth in Georgia statutes,[10] so the plaintiff was not entitled to a firearms permit. The Georgia Supreme Court acknowledged that the plaintiff had not utilized the statutory avenues for restoration of his firearm rights. It held, however, that "these statutory routes to relief are not the exclusive means by which a convicted felon may regain the right to possess firearms (and obtain a [firearms permit]) under Georgia law." *Id.* at 602. The *Ferguson* Court explained:

> Our Constitution provides another way in which a convicted criminal's lost right to keep and bear arms may be restored, and the disabilities imposed by state firearms laws removed: a decision doing so from the Georgia Board of Pardons and Paroles, like the one Perry received in 1979. At that time, the 1976 Georgia Constitution said that the Board "*shall have power to* grant reprieves, pardons, and paroles, to commute penalties, *remove disabilities imposed by law*, and may remit any part of a sentence for any offense against the State, after conviction," with only two narrow exceptions not applicable to Perry. Ga. Const. of 1976, Art. IV, Sec. II, Par. I (emphasis added). Moreover, the Board's authority could not be restricted by statute, as the Constitution expressly precluded the General Assembly from enacting laws "inconsistent with[ ] this Paragraph." *Id.* Our current Constitution grants the Board the same broad authority, . . . and the General Assembly still may not enact statutes that limit the Board's powers, see Art. IV, Sec. VII, Par. II (providing that the "powers and duties of members of constitutional boards and commissions provided for in this article, *except the Board of Pardons and Paroles*, shall be as provided by law" (emphasis added)).

*Id.* The *Ferguson* Court acknowledged that Georgia's General Assembly had enacted statutes providing for the removal of a felon's firearm disabilities under certain circumstances, but it found that the statutes were not the only way to obtain restoration and were not inconsistent with the Board's power to remove firearm disabilities. Thus, the *Ferguson* Court recognized that Georgia's constitution specifically gave the Board of

---

[10]Pursuant to Georgia Code Annotated § 16-11-131(d), "a person who has been convicted of a felony but who has been granted relief from the disabilities imposed by the laws of the United States" may, under certain circumstances, apply to the Georgia Board of Public Safety to have their firearm rights restored.

Pardons and Paroles the power to "remove disabilities imposed by law," including firearm disabilities, without requiring the petitioner to go through statutory procedures.

In addition to the holding in **Ferguson**, Georgia's statutes contain a built-in reprieve from firearm disabilities for convicted felons who have received an executive pardon. Georgia Code Annotated § 16-11-131, which makes it a crime for a convicted felon to possess a firearm, also includes the proviso that the firearm prohibition "shall not apply to any person who has been pardoned for the felony . . . and, by the terms of the pardon, has expressly been authorized to receive, possess, or transport a firearm." **Id.** § 16-11-131(c). Moreover, Georgia Code Annotated § 16-11-129, which governs the issuance of firearms permits, provides that a firearms permit shall not be issued to a person who has been convicted of a felony "and has not been pardoned for such felony." Thus, a convicted felon who has been pardoned for his crime may be issued a firearms permit under this statute.

Therefore, in Georgia, a felon can have his firearm rights restored automatically through an executive pardon that expressly restores those rights, or through a petition under Georgia statutes for restoration of his firearm rights. **See Id.** § 16-11-131(d). Neither the executive pardon procedure nor the statutory restoration procedure appears to treat those convicted of drug felonies or violent felonies differently from other felons. It is apparent, then, that Georgia's constitution, statutes, and caselaw are all aligned. All indicate a public policy to permit the restoration of firearm rights for a convicted drug felon or violent felon; also, a person who receives an executive pardon that expressly restores firearm rights, such as Mr. Blackwell, automatically has his firearm rights restored by virtue of the pardon.

### *Tennessee*

In our analysis of Tennessee public policy, we will consider those policies as reflected in the law in effect at the time of the decision of the trial court below, as well as the impact of the recent amendment to Tennessee's expungement statute.

Tennessee's disability statutes "designate a particular civil disability that occurs upon" a person's conviction for a particular crime. **Cole v. Campbell**, 968 S.W.2d 274, 276 (Tenn. 1998), **quoted in State v. Johnson**, 79 S.W.3d 522, 527 (Tenn. 2002). In Tennessee, when a person's civil rights are removed pursuant to a disability statute, the civil disability "remains in effect throughout the defendant's life unless restored by a specific statutory procedure." **Id.**

The "statutory procedure" for the restoration of civil rights is set forth in Tennessee Code Annotated § 40-29-101, known as the "Restoration Statute." Under the Restoration Statute,

a person whose civil rights are removed by virtue of the disability statutes may petition the circuit court for restoration of those rights:

> (a) Persons rendered infamous or deprived of the rights of citizenship by the judgment of any state or federal court may have their full rights of citizenship restored by the circuit court.

> (b) *Those pardoned, if the pardon does restore full rights of citizenship, may petition for restoration immediately after the pardon*; provided, that a court shall not have jurisdiction to alter, delete or render void special conditions of a pardon pertaining to the right of suffrage.

> (c) Those convicted of an infamous crime may petition for restoration upon the expiration of the maximum sentence imposed for the infamous crime.

Tenn. Code Ann. § 40-29-101 (2012) (emphasis added). As the emphasized portion of the statute indicates, a person who has received a pardon that restores his "full rights of citizenship" must still petition the circuit court pursuant to this statute to obtain the restoration of those citizenship rights; the restoration of rights is not automatic by virtue of the pardon itself. Consistent with the language of the Restoration Statute, Tennessee courts have noted that "[t]here is no 'absolute right to the restoration of the full rights of citizenship'" under this statute, even if the statutory requirements are satisfied. *In re Cox*, 389 S.W.3d 794, 798 (Tenn. Crim. App. 2012) (quoting *Johnson*, 79 S.W.3d at 527).

Interpreting the Restoration Statute, the Tennessee Supreme Court has held that the restorable "full rights of citizenship" to which the statute refers do not include firearm rights if those rights were removed pursuant to Section 39-17-1307(b)(1). In *State v. Johnson*, the defendant was convicted in Tennessee of a violent felony, aggravated assault with a knife. Pursuant to the disability statutes, this conviction resulted in the loss of his citizenship rights, including his right to lawfully own and carry a handgun. Years later, the defendant obtained a Certificate of Restoration of Citizenship pursuant to the Tennessee Restoration Statute. Less than a year after that, the defendant was found to be in possession of a rifle, a handgun, and marijuana. *Johnson*, 79 S.W.3d at 524-25.

The defendant in *Johnson* entered a guilty plea to unlawful possession of a weapon and to one count of simple possession of marijuana. In entering his guilty pleas, the defendant reserved for appeal the following certified question of law: "After an individual has had his full rights of citizenship restored pursuant to Tenn. Code Ann. § 40-29-101, *et seq.*, following a conviction of aggravated assault with a deadly weapon, can he be convicted of

-15-

a violation of Tenn. Code Ann. § 39-17-1307(b)(1)(A),[11] or is he allowed to possess a handgun?" *Johnson*, 79 S.W.3d at 524. In a split decision, a majority of the Tennessee Court of Criminal Appeals concluded that a person convicted of a violent felony whose citizenship rights have been restored may lawfully possess a handgun. The Tennessee Supreme Court then granted the State's request for permission to appeal. *Id.* at 525.

The Supreme Court in *Johnson* reversed the decision of the intermediate appellate court. Interpreting Tennessee statutes, it held that a person convicted of a violent felony *cannot* have his right to lawfully possess a handgun restored, "even where his or her citizenship rights have been restored pursuant to Tenn. Code Ann. § 40-29-101, *et seq.*" *Id.* at 528. The *Johnson* Court first described the disability statutes that put into effect certain disabilities upon the conviction of a defendant:

> Initially, we observe that Tennessee has "specific disability statutes," which "designate a particular civil disability that occurs upon the conviction and remains in effect throughout the defendant's life unless restored by a specific statutory procedure." *Cole v. Campbell*, 968 S.W.2d 274, 276 (Tenn. 1998) (citing Special Project, *The Collateral Consequences of a Criminal Conviction*, 23 Vand. L. Rev. 929, 951 (1970)). Specific disability statutes include the loss of the right to vote, *see* Tenn. Code Ann. § 40-20-112 (1997); the loss of the right to hold public office, *see id.* § 40-20-114; the loss of the right to serve as a fiduciary, *see id.* § 40-20-115; and the loss of the right to possess a handgun, *see id.* § 39-17-1307(b).

*Id.* at 527. The *Johnson* Court looked at the "specific disability statute" at issue, Section 39-17-1307(b)(1)(A), which unambiguously prohibits a person convicted of a violent felony or a drug felony from possessing a handgun. *Id.* at 526. The Court then examined other pertinent statutes and found that they demonstrated a legislative intent to not permit the restoration of handgun rights for violent felons under the Restoration Statute. It noted that, while Section 39-17-1308[12] provides for certain defenses to a charge of felony possession under Section 39-17-1307, those defenses are specifically made unavailable "to persons described in § 39-17-1307(b)(1)," *i.e.*, violent felons and drug felons. *Id.* at 527 (quoting Tenn. Code Ann. § 39-17-1308(b)). Furthermore, Section 39-17-1308 does not include

---

[11]The version of the statute at issue in *Johnson* prohibited the possession of a "handgun." As indicated *supra* at note 3, the statute was later amended to replace the term "handgun" with "firearm."

[12]Section 39-17-1308(a)(3)(A) made it "a defense to the application of § 39-17-1307 if the possession or carrying was . . . [a]t the person's [p]lace of residence." Tenn. Code Ann. § 39-17-1308(a)(3)(A).

"restoration of citizenship rights" as one of the available defenses to a charge of felony firearm possession. *Id.* at 528.

The *Johnson* Court further noted that "other statutory provisions likewise explicitly limit a convicted violent felon's right to possess a handgun, even when that felon has had his or her citizenship rights restored under" the Restoration Statute. *Id.* at 528. As an example, the Court cited Tennessee Code Annotated § 39-17-1316, which generally prohibits the sale of a firearm to a convicted felon. Subsection (a)(2) of that statute states that the prohibition does not apply to one who was pardoned or whose rights were restored pursuant to the Restoration Statute — however, both conditions are subject to the proviso that the person is not prohibited from possessing a firearm under 39-17-1307, i.e., a violent felon or a drug felon. *Id.* Finally, the Court noted that Section 39-17-1351(j)(3) provides that a handgun permit may be issued to a felon whose rights of citizenship have been restored, but only if the felon *was not* convicted of a violent felony or certain drug felonies. *Id.* These statutes, the *Johnson* Court reasoned, "demonstrate the clear intent [of the legislature] to prohibit convicted violent felons from possessing a handgun," even if they have obtained restoration of other citizenship rights under the Restoration Statute. *Id.*

The holding in *Johnson* has not been abrogated or overruled. Although the facts in *Johnson* involve a person who was convicted of a violent felony, other Tennessee caselaw indicates that the holding in *Johnson* is equally applicable to one who is convicted of a felony drug offense. *See State v. Ferguson*, 106 S.W.3d 665, 667 (Tenn. Ct. App. 2003); *see also* David L Raybin, "*Stick to Your Guns: Restoration of Tennessee's 'Firearm Rights'*" 39 Tenn. B. J. 17, 18 (Mar. 2003) (citing *Johnson* and concluding that, under Tennessee statutes, "even restoration of rights will not allow possession of handguns for those convicted of certain violent felonies or felony drug convictions"); *Evans v. State*, 66 Tenn. 12, 1872 WL 4238, at *2 (1872) (a pardon does not restore the right to testify to a person rendered incompetent to testify by virtue of his pardoned crime). We note as well that, since *Johnson* was decided, Section 39-17-1307 has been amended, but it still makes it a felony for drug felons, and persons convicted of a felony "involving the use or attempted use of force, violence, or a deadly weapon, to possess a firearm."[13] Tenn. Code Ann. § 39-17-1307(b)(1)(A).

---

[13]Subsection (b) currently provides:

> (b)(1) A person commits an offense who unlawfully possesses a firearm, as defined in § 39-11-106, and:
> > (A) Has been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon; or
> > (B) Has been convicted of a felony drug offense.
> (2) An offense under subdivision (b)(1)(A) is a Class C felony.

(continued...)

We note further that Tennessee's disability statute does not exempt a pardoned violent felon or drug felon from the disability imposed by the statute, as does the comparable statute in Georgia. *Compare* Tenn. Code Ann. § 39-17-1307 *with* Ga. Stat. Ann. § 16-11-131(c). Furthermore, as noted in *Johnson*, Tennessee's firearms permit statute does not allow most convicted drug felons, even if pardoned, to obtain a firearms permit, as does Georgia's firearms permit statute.[14] *Compare* Tenn. Code Ann. § 39-17-1351(j)(3) *with* Ga. Code Ann. § 16-11-129(b)(2)(B).

Thus, Tennessee's public policy, as reflected in the statutes as they existed at the time of the trial court's decision, stands in stark contrast to Georgia's public policy of permitting a convicted drug felon or violent felon to obtain restoration of his right to lawfully own and carry a firearm. Unlike Georgia, Tennessee's legislature clearly adhered to a policy of making drug felons and violent felons ineligible for restoration of firearm rights, even if they have been pardoned for their crime.

The first and only indication that a person convicted of a felony, albeit only a non-violent felony, may regain his firearm rights in Tennessee is found in the very recent amendment to Tennessee's expungement statute.[15] An overview of the amendment, enacted after the trial court issued its decision and after the parties briefed and argued their positions on appeal, is helpful to our analysis.

Historically, Tennessee's expungement statute provided a mechanism for expunging the criminal records of persons whose criminal charges were dismissed, whose charges resulted in acquittal, or who completed a diversion program. Tenn. Code Ann. § 40-32-101 (2012). Prior to 2012, the expungement statute essentially did not permit the expungement of criminal records for a person who was convicted of a crime; relief was available only in circumstances where the person was, in effect, deemed innocent. In 2012, the expungement

---

[13](...continued)
        (3) An offense under subdivision (b)(1)(B) is a Class D felony.

Tenn. Code Ann. § 39-17-1307(b) (Supp. 2012).

[14]Although the record is unclear on the nature of Mr. Blackwell's drug convictions, he states that he was convicted of selling Schedule II drugs, which would prevent him from obtaining a firearms permit in Tennessee under Section 39-17-1351.

[15]Mr. Blackwell noted in his supplemental brief that, before the new amendment was passed, the expungement statute was irrelevant to the issues on appeal, because "(1) he was not seeking Full Faith and Credit of an expungement, (2) the list of expungeable offenses in the statute did not include the crime of which Mr. Blackwell was convicted, and (3) the statute did not address persons who had been pardoned." Appellee's Supplemental Brief at 4 (footnote omitted).

statute was amended in a significant way by adding a wholly new subsection (g). Under subsection (g), the term "eligible petitioner" includes a person who has been convicted of one of the enumerated non-violent misdemeanors or felonies.[16] *See id.* § 40-32-101(g). Under subsection (g), the "eligible petitioner" is entitled to file a petition to have his criminal records expunged if (A) the person has not been convicted of any other offense, (B) five years has elapsed since the completion of the sentence, and (C) the person a has paid all fines and costs and has complied with any conditions imposed. *Id.* § 40-32-101(g)(2).

In addition to broadening the category of persons eligible for expungement, subsection (g) also provides that, when criminal records are expunged pursuant to that subsection, "all public records of the expunged conviction [are] destroyed," and the "expunction has the legal effect of restoring the petitioner . . . to the same status occupied before the arrest, indictment, information, trial and conviction." *Id.* § 40-32-101(g)(14)(A), (B). Relevant to this case, subsection (g) further provides: "Notwithstanding § 39-17-1307(b)(1)(B) [relating to drug felons] and (c) [relating to felony handgun possession], a petitioner whose petition is granted pursuant to this subsection (g) . . . shall be eligible to purchase a firearm pursuant to § 39-16-1316 and apply for and be granted a handgun carry permit pursuant to § 39-17-1351." *Id.* § 40-32-101(g)(14)(E). To obtain relief under this subsection, the eligible petitioner must file a petition in the court in which he or she was convicted of the offense sought to be expunged, and both the petitioner and the district attorney general may submit evidence relating to why the person should (or should not) have his criminal records expunged. That court has discretion over whether to grant the petition; subsection (g) provides specifically that, "[i]n making a decision on the petition, the court shall consider all evidence and weigh the interests of the petitioner against the best interests of justice and public safety." *Id.* § 40-32-101(g)(3) - (5).

Very recently, on May 14, 2013, the General Assembly passed another significant amendment to the expungement statute by adding subsection (h). Subsection (h) describes a new category of "eligible petitioners," namely, persons who have been "convicted of a non-violent crime" and who have received an executive pardon after a favorable vote from Tennessee's Board of Parole:

> (h)(1) For purposes of this subsection (h), "eligible petitioner" means a person who was convicted of a non-violent crime after January 1, 1980, if the person:

---

[16]It is undisputed that Mr. Blackwell's crimes were not included in the list of expungeable offenses in the statute.

(A) Petitioned the court in which the petitioner was convicted of the offense and the judge finds that the offense was a non-violent crime;

(B) Petitioned for and received a positive vote from the board of parole to receive a pardon; and

(C) Received a pardon by the governor.

(2) Notwithstanding the provisions of this section, effective July 1, 2013, an eligible petitioner under subdivision (h)(1) may file a petition for expunction of that person's public records involving the crime. The procedures in subdivisions (g)(3)–(6), (8), (10), (14) and (15) will apply to a petitioner under this subsection (h).

2013 Tenn. Laws Pub. Ch. 384 (S.B. 860). Thus, pursuant to this subsection and subsection (g)(14)(E) by reference,[17] a person who receives a pardon for a non-violent felony under subsection (h) may not only file a petition to have his criminal records expunged, but they may also regain their right to purchase and possess a firearm "notwithstanding § 39-17-1307(b)(1)(B)" if their petition is granted.

The 2013 amendment to the expungement statute is an important change in Tennessee's public policy on the restoration of firearm rights to a convicted felon, and it is relevant to our analysis in the instant case. In one respect, by requiring that a felony be *non-violent* in order to be eligible for expungement, the amendment confirms our conclusion that a person who was convicted of a *violent* felony in Tennessee — one who has lost their firearm rights pursuant to Section 39-17-1307(b)(1)(A) — cannot regain his firearm rights, either through an executive pardon, the Restoration Statute, or the expungement statute. But the amendment creates an entirely new avenue for the restoration of firearm rights in the specific situation in which "a person who was convicted of a non-violent crime," including a *non-violent drug* felony, has received a pardon for his crime. To be sure, the amendment highlights the fact that, in contrast to Georgia, a Tennessee executive pardon does not effect an *automatic* restoration of firearm rights to a convicted felon. Still, the new amendment sets out a statutory procedure by which a non-violent drug felon *may* have his firearm rights restored, whereas Tennessee laws previously disallowed the restoration of firearm rights for a convicted drug felon under any circumstances.

---

[17]Subsection (g)(14) was also amended by deleting the language "this subsection (g)" and substituting instead the language "this subsection (g) or subsection (h)" wherever it appears, so as to clarify that it applies when expungement is sought under subsection (h). *See* 2013 Tenn. Laws Pub. Ch. 384 (S.B. 860).

As we have indicated above, the State agrees that the 2013 amendment to the expungement statute effects a change in Tennessee's public policy; it argues, however, that the change is a very narrow one, and that it applies only where a petitioner can establish that he would have been entitled to expungement of his records under the new subsection (h).  The State concedes that Tennessee's public policy would not be offended *provided* Mr. Blackwell can establish that he is "a person who was convicted of a non-violent crime," and that he would otherwise have been eligible for expungement under this provision had his conviction been in Tennessee.  It maintains, however, that Tennessee's overall public policy disfavors the restoration of a drug felon's firearm rights unless their circumstances fit within the parameters of the new statute, and that Tennessee is, therefore, not required to give full faith and credit to Georgia's restoration of Mr. Blackwell's firearm rights without such a showing.  Thus, the State argues that we should remand the case to the trial court for further fact finding, so that Mr. Blackwell can establish that he would have been entitled to seek restoration under the new expungement statute had he been convicted in Tennessee.

### *Conflict in Public Policies of Georgia and Tennessee*

The trial court held in favor of Mr. Blackwell based on the pleadings alone, and the pleadings do not contain any details about Mr. Blackwell's crimes.  Nevertheless, we do not agree with the State that the proper inquiry is whether Mr. Blackwell can prove that the circumstances of his conviction are such that he would have been eligible for expungement under the 2013 amendment to the Tennessee expungement statute.[18]  Rather, we must keep our focus on the overall public policy of Tennessee, being mindful that the State has the "stern and heavy" burden of establishing that the policies of Tennessee and Georgia are so diametrically opposed so as to warrant Tennessee's refusal to give full faith and credit to Georgia's restoration of Mr. Blackwell's firearm rights.

We agree, however, that there has been some change in Tennessee's policy.  The tipping point on this issue is the fact that the legislature has seen fit to relax its blanket prohibition on the restoration of firearm rights for pardoned criminals, including drug felons, in circumstances where the crime was *non-violent* in nature.  Thus, the general public policy in Tennessee, which formerly prohibited all convicted drug felons from regaining their firearm rights, is no longer in total conflict with the public policy of Georgia, in that

---

[18]The State suggests that we remand the case "to make a determination as to whether . . . Respondent would have been eligible to obtain relief under Tenn. Code Ann. § 40-[32]-101(h)."  We are not certain how that would be done.  Mr. Blackwell, having been convicted in Georgia, could not fully satisfy the requirements in subsection (h), given the fact that it requires him to return to the *convicting* court (which is in Georgia) for a determination on whether his crimes were non-violent in nature and whether expungement would be warranted.

Tennessee now would appear to allow *non-violent* drug felons to have at least a statutory avenue by which they may regain their firearm rights after receiving a pardon for their crime. Certainly the two states' public policies are not the same, as Mr. Blackwell would have this Court believe. But in light of the amendment to Tennessee's expungement statute, we can no longer say that the public policies of Tennessee and Georgia on the restoration of firearm rights to a pardoned *non-violent* drug felon "fatally conflict" so as to justify Tennessee's refusal to give full faith and credit to the Georgia restoration of Mr. Blackwell's firearm rights. ***Four Seasons Gardening & Landscaping***, 688 S.W.2d at 445.

In short, we disagree with the trial court's holding that there was "no inconsistency between Tennessee and Georgia's public policies regarding pardons" under the Tennessee statutes at the time of the trial court's decision in July 2012, and in particular we disagree with the trial court's focus on Tennessee's policy regarding pardons rather than the restoration of firearm rights for convicted drug felons. Under Tennessee statutes as they exist now, however, we find ourselves in partial agreement with the trial court's ultimate conclusion, albeit on a different basis. We conclude that, since the passage of the 2013 amendment to the expungement statute, the public policies of Tennessee and Georgia are not entirely inconsistent on the restoration of firearm rights for those who have committed non-violent drug felonies.

Thus, we recognize that the statutory landscape has changed considerably since the trial court proceedings below; but the record indicates little about Mr. Blackwell's offenses, and particularly whether the drug felonies involved "the use or attempted use of force, violence, or a deadly weapon." Tenn. Code Ann. § 39-17-1307(b)(1)(A). The amendment to Tennessee's expungement statute does not change Tennessee's public policy against the restoration of firearm rights for violent felons; the petitioner under the new statute may obtain relief only if the judge of the convicting court "finds that the offense was a non-violent crime." 2013 Tenn. Laws Pub. Ch. 384 (S.B. 860), to be codified at Tenn. Code Ann. § 40-32-101(h)(1)(A), effective July 1, 2013. The public policy in Tennessee prohibiting a person convicted of a felony "involving the use or attempted use of force, violence, or a deadly weapon" from regaining his firearm rights remains at loggerheads with the public policy of Georgia, which apparently permits the restoration of firearm rights to

persons convicted of *all* felonies, violent or not.[19]  ***See*** Tenn. Code Ann. § 39-17-1307(b)(1)(A).

Moreover, Tennessee's public policy against the restoration of firearm rights for persons convicted of a felony involving force, violence, or a deadly weapon implicates public safety and arises out of Tennessee's penal statutes.  One court has commented that a state's penal code is perhaps the strongest statement of its public policy.  ***New Mexico v. Edmondson***, 818 P.2d 855, 860-61 (N.M. Ct. App. 1991).  We find persuasive both the ***Edmondson*** case and ***People v. Shear***, 71 Cal. App. 4th 278, 83 Cal. Rptr. 2d 707 (Ct. App. 3d Dist. 1999), cited by the State on the issue of whether the public policy difference between Georgia and Tennessee is of sufficient importance to warrant application of the public-policy exception to the Full Faith and Credit Clause.  As in ***Shear***, the Tennessee statutes on firearm rights are borne of the State's significant interest in "protecting the safety of its citizens" by barring persons whom our legislature has deemed unfit to be entrusted with the possession of firearms.  ***Shear***, 71 Cal. App. 4th at 288.  Tennessee's penal code conveys "in the clearest possible terms [Tennessee's] view of public policy."  ***Edmondson***, 818 P.2d at 860.  In enacting the statutes governing firearm rights, Tennessee's legislature made the public policy judgments inherent in discharging its constitutional duty, "by law, to regulate the wearing of arms with a view to prevent crime."  Tenn. Const. art. I, § 26.  The Full Faith and Credit Clause "should not require a state to abandon such fundamental policy in favor of the public policy of another jurisdiction."  ***Edmondson***, 818 P.2d at 860-61.

---

[19]We are unpersuaded by Mr. Blackwell's argument that any difference in the statutes of Georgia and Tennessee regarding the restoration of firearm rights do not matter because the pardon issued in this case explicitly restored his firearm rights, and Tennessee's governor would have the power to do the same thing in Tennessee.  Notwithstanding Mr Blackwell's eloquent arguments on the breadth of the governor's pardon power, the pivotal public policy relates to each state's view of the restoration of firearm rights for a convicted felon, regardless of method.  It matters not whether Georgia restored Mr. Blackwell's rights through executive pardon, statutory procedure, or otherwise.  We are charged in this appeal with determining whether Georgia's restoration of Mr. Blackwell's firearm rights, *by any means,* conflicts with Tennessee's public policy on the restoration of a convicted felon's firearm rights.  The allocation of authority in the Tennessee Constitution suggests that, to ascertain Tennessee's public policy on the restoration of firearm rights, we should look to Tennessee statutes regulating firearms, rather than to executive power to remove firearm disabilities.  While the Georgia Constitution explicitly provides for executive authority to remove disabilities such as firearm disabilities, Tennessee's constitution says nothing about it.  Tenn. Const. art. III, § VI.  On the other hand, the Tennessee constitution confers *explicit* authority upon the Tennessee Legislature to regulate firearm rights:  "[T]he Legislature shall have power, by law, to regulate the wearing of arms with a view to prevent crime."  Tenn. Const. art. I, § 26; *see* Tenn. Code Ann. § 39-17-1351(a) (recognizing the power of the general assembly "to regulate the wearing of arms with a view to prevent crime").  It is pursuant to this constitutional authority that Tennessee's legislature enacted the Restoration Statute, the expungement statute, and the other statutes that address firearm rights.  Therefore, we decline Mr. Blackwell's invitation to probe the outer boundaries of executive authority in Tennessee and instead determine the relevant Tennessee public policy by looking to Tennessee's statutes.

As we have indicated, this case was decided based on the pleadings alone, and the pleadings do not give details about the circumstances of Mr. Blackwell's crimes. Specifically, Mr. Blackwell's complaint states that he was pardoned for "drug felonies,"[20] but it does not indicate whether the drug felonies of which Mr. Blackwell was pardoned involved the use or attempted use of force, violence, or a deadly weapon. For this reason, the case should be remanded for further proceedings. On remand, the State bears the "stern and heavy" burden of proving that Mr. Blackwell's crimes involved the use or attempted use of force, violence, or a deadly weapon. If this is so, then giving full faith and credit to Georgia's restoration of Mr. Blackwell's firearm rights would be directly contrary to Tennessee's strong public policy against the restoration of firearm rights for one convicted of such a felony. In other words, requiring Tennessee to extend full faith and credit to Georgia's restoration of Mr. Blackwell's firearm rights under those circumstances would require "too large a sacrifice by [Tennessee] of its interests in a matter with which it is primarily concerned" — protecting public safety and preventing crime. Restatement (Second) of Conflict of Laws § 103 cmt. b.

Therefore, we vacate the trial court's grant of judgment on the pleadings to Mr Blackwell.[21] We remand the case to the trial court for the State to have the opportunity to show that giving full faith and credit to Georgia's restoration of Mr. Blackwell's firearm rights would offend Tennessee's public policy against the restoration of firearm rights for a person convicted of a felony that involved the use or attempted use of force, violence, or a deadly weapon, and further related proceedings.

The trial court below based its decision solely on the Full Faith and Credit Clause, and so found it unnecessary to reach other arguments raised by Mr. Blackwell. Mr. Blackwell argues that, if we find that his firearm rights are not guaranteed under the Full Faith and Credit Clause, his firearm rights are independently guaranteed by his right to bear arms under the federal and state constitutions, the Equal Protection Clause of the United States Constitution, and the Privileges and Immunities Clause of the United States Constitution.

_____

[20]Mr. Blackwell's pardon, which was attached to the complaint as an exhibit, indicates only that the crimes of which he was pardoned were three counts of "Violation of Georgia Controlled Substance Act (Sale of Cocaine)."

[21]As an alternative argument, Mr. Blackwell argues that Tennessee's acceptance of his Georgia conviction requires equal acceptance of his Georgia pardon under the Full Faith and Credit Clause. In support, Mr. Blackwell urges this Court to adopt the reasoning in *Schlenther v. Department of State, Division of Licensing*, 743 So. 2d 536 (Fla. Dist. Ct. App. 1998). We respectfully decline to apply the reasoning in *Schlenther* to the case at bar. We see no indication in *Schlenther* that the public-policy exception to full faith and credit was raised as an issue, or even that there were any differences in the public policies of Connecticut and Florida. This argument is without merit.

In light of our decision herein, we leave it to the trial court, in its discretion, to address any of Mr. Blackwell's other arguments that were raised but not addressed by the trial court in the order on appeal if Mr. Blackwell does not prevail in his claim on other grounds.[22]

## Attorney Fees

As we have indicated, the trial court granted Mr. Blackwell his reasonable attorney fees and costs as the "prevailing party" in this action. In doing so, the trial court acknowledged that it did not reach any of Mr. Blackwell's constitutional arguments, but it nevertheless awarded him attorney fees pursuant to 42 U.S.C. § 1988 because "the operative facts of the case concerned the enforcement of [Mr. Blackwell's] Second Amendment rights [to bear arms]."[23]

On appeal, the State argues that Mr. Blackwell was not entitled to an attorney fee award under Section 1988, because the trial court decided to give full faith and credit to the Georgia pardon without reaching Mr. Blackwell's constitutional arguments that were cognizable under Section 1983. The State acknowledges that Section 1988 was intended to give courts authority to award a reasonable attorney fee to the prevailing party in actions brought pursuant to Section 1983 and other civil rights laws. It argues, however, that "not all matters of constitutional law are subject to claims under § 1983." It notes three considerations for determining whether a federal statute confers a "right" within the meaning of Section 1983:

> In deciding whether a federal right has been violated, we have considered [1] whether the provision in question creates obligations binding on the governmental unit or rather "does no more than express a congressional preference for certain kinds of treatment." [2] The interest the plaintiff asserts must not be "too vague and amorphous" to be "beyond the competence of the judiciary to enforce." [3] We have also asked whether the provision in question was "intend[ed] to benefit" the putative plaintiff.

*Dennis v. Higgins*, 498 U.S. 439, 448-49 (1991) (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989) (internal citations omitted)). The Full Faith and Credit

---

[22]We express no opinion on whether Blackwell's other arguments were properly raised. That is a matter for the trial court to decide in the first instance.

[23]The Second Amendment to the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The State of Tennessee has its own analogue to the Second Amendment, which provides: "That the citizens of this State have a right to keep and to bear arms for their common defense; but the Legislature shall have power, by law, to regulate the wearing of arms with a view to prevent crime." Tenn. Const. art. I, § 26.

Clause, the State argues, is not intended to benefit a putative plaintiff. Instead of conferring a right that belongs to the individual, the State claims, the full-faith-and-credit requirement is a duty that states have to respect the orders of other states. Therefore, the State argues, the trial court's ruling, based solely on the Full Faith and Credit Clause, is insufficient to give rise to a federal cause of action under Section 1983, and so is insufficient to warrant an attorney fee award under Section 1988.

In response, Mr. Blackwell asserts that the trial court correctly awarded him attorney fees under Section 1988.[24] Mr. Blackwell claims that the declaratory relief he received based on the Full Faith and Credit Clause entitles him to an award of attorney fees, because a claim under this clause is cognizable under Section 1983. He claims that the purpose of the clause is to preserve civil rights that were acquired or confirmed under the public acts of Georgia, requiring recognition of their validity in other states. *Pac. Employers Ins. Co. v. Indus. Accident Comm'n of State of Cal.*, 306 U.S. 493, 501 (1939). Mr. Blackwell also argues that the enforcement of another state's judgment is a "substantive constitutional right." *Finstuen v. Crutcher*, 496 F.3d 1139, 1155 (10th Cir. 2007). He further claims that, if a party prevails in an action *alleging* a federal constitutional deprivation, then that party is entitled to attorney fees under Section 1988; it does not matter that the relief awarded was not based on the alleged constitutional deprivation.

It is undisputed that the trial court held in favor of Mr. Blackwell on his full-faith-and-credit claim, and that it did not reach the other constitutional issues based on "the doctrine of constitutional avoidance." We have found no case in which a court has concluded that a declaratory judgment action seeking to enforce another state's official action is, itself, a claim that is cognizable under Section 1983. The full-faith-and-credit requirement "embodies an important federal policy . . . designed to give the United States certain of the benefits of a unified nation." Restatement (Second) of Conflict of Laws § 103 cmt. b. Thus, the full-faith-and-credit requirement is intended to promote a unified nation, not to address individual constitutional interests, and it is not a source of a federal right. *See Adar v. Smith*, 639 F.3d 146, 151-57 (5th Cir. 2011) (en banc) (concluding that a violation of the Full Faith and Credit Clause is not a basis for relief under Section 1983, and that "the only remedy available for violations of full faith and credit is review by the Supreme Court"), *cert. denied*, 132 S. Ct. 400 (2011). Therefore, we reject Mr. Blackwell's argument that a claim for declaratory relief under the Full Faith and Credit Clause is, by itself, cognizable under Section 1983.

---

[24]Mr. Blackwell argues that this issue is settled by the law-of-the-case doctrine, because this Court previously affirmed the trial court's finding that he suffered a constitutional deprivation. We do not agree with Mr. Blackwell's interpretation of our opinion in the first appeal of this case.

No matter, argues Mr. Blackwell, because "a plaintiff need not succeed upon — or even directly plead — a direct personal constitutional violation in order to be awarded attorney fees [under Section 1988]." He claims that a plaintiff need only show that the constitutional violation is "related to the plaintiffs' ultimate success," quoting *Americans United for Separation of Church and State v. School District of the City of Grand Rapids*, 835 F.2d 627, 631 (6th Cir. 1987), *quoted in Bloomingdale's By Mail Ltd. v. Huddleston*, 848 S.W.2d 52, 55 (Tenn. 1992).

In *Americans United*, the plaintiffs filed a complaint for declaratory relief, seeking a declaration that certain programs of the defendant school district violated the Establishment Clause of the First Amendment of the federal Constitution, made applicable to the states by the Fourteenth Amendment, and also seeking a permanent injunction against continuation of the program. *Americans United*, 835 F.2d at 628. The plaintiffs also alleged in their complaint that the acts of the defendants "under color of law, deprive the individual plaintiffs . . . of rights, privileges and immunities guaranteed them by the Constitution of the United States, and more particularly, rights guaranteed them under the First and Fourteenth Amendments . . . ." *Id.* The plaintiffs sought declaratory relief, but they did not specifically state that the relief was sought pursuant to Section 1983. Ultimately, the plaintiffs prevailed on the merits; on appeal, the Supreme Court upheld the determination that the school programs constituted violations of "the dictates of the Establishment Clause of the First Amendment."[25] *Id.* at 629 (quoting Supreme Court decision). The case was remanded for further proceedings.

On remand in *Americans United*, the plaintiffs sought an award of attorney fees under 42 U.S.C. § 1988, even though they had not specifically mentioned Section 1983 or Section 1988 in their complaint. *Id.* at 629. The district court concluded that the plaintiffs' action was not brought "to enforce a provision of" 42 U.S.C. § 1983, and therefore did not qualify for an award of attorney's fees under 42 U.S.C. § 1988. *Id.* On appeal, the Sixth Circuit recognized that no claim had been made pursuant to Section 1983 or Section 1988. It held, however, that a court must focus on the substance of the action in order to determine whether attorney fees may be awarded pursuant to Section 1988. In short, if the claim would be cognizable under Section 1983, then attorney fees may be awarded under Section 1988:

> The rule to be distilled from [a line of decisions addressing the matter] is that § 1988 is concerned with the substance of a prevailing party's action, rather than the form in which it is presented. The mere failure to plead or argue reliance on § 1983 is not fatal to a claim for attorney's fees if the pleadings and

---

[25]The Supreme Court's decision in *Americans United* has since been overruled. *See Agostini v. Felton*, 521 U.S. 203 (1997). The overturning of that decision, however, does not affect the issues in this appeal.

evidence *do present a substantial Fourteenth Amendment claim for which §
1983 provides a remedy,* and this claim is related to the plaintiffs' ultimate
success.

***Americans United***, 835 F.2d at 631 (emphasis added). Thus, the court held, "only two
allegations are required to state a cause of action under § 1983: (1) a plaintiff must allege
that some person has deprived him of a federal right; and (2) he must allege that the person
so depriving him acted under color of state law." ***Id.*** at 632. Because the plaintiffs prevailed
in an action that alleged these things, the appellate court held, then they were entitled to
attorney fees under Section 1988. ***Id.*** at 633-34.

Based on ***Americans United***, Mr. Blackwell argues that, because he alleged personal
constitutional violations, and the claim upon which he prevailed is "related to" his
constitutional claims, then he is entitled to attorney fees under Section 1988. In our view,
Mr. Blackwell misapprehends the conclusion of the Sixth Circuit in ***Americans United***. The
appellate court in that case recognized that, even if the claim for relief in the petition for
declaratory relief does not specifically mention Section 1983, a plaintiff may still establish
entitlement to attorney fees under Section 1988 if the substance of his petition alleges claims
cognizable under Section 1983, and the plaintiff prevailed on those claims. In the instant
case, even though Mr. Blackwell's full-faith-and-credit claim is in some sense "related to"
his other constitutional claims, he has not established that any of his personal constitutional
rights have been violated. A party cannot recover attorney fees for deprivation of his
constitutional rights if he has not succeeded on his constitutional claims. ***Heyne v. Metro.
Nashville Bd. of Educ.***, 380 S.W.3d 715, 740 (Tenn. 2012) ("[A] party must prove a
violation of its constitutional rights before it is entitled to attorneys' fees [under Section
1988].").

Mr. Blackwell makes much of the trial court's comment that "the operative facts of the case
concerned enforcement of [his] Second Amendment rights," and on the supposed fact that
his Georgia pardon was based on his Second Amendment right to bear arms. We respectfully
disagree. Under the laws of either Georgia or Tennessee, Mr. Blackwell forfeited his
constitutional right to bear arms when he committed the drug felonies for which he was
convicted. Any law that allows him to regain those rights after conviction — in either
Georgia or Tennessee — springs from legislative grace, not from the constitutional right of
a convicted felon to bear arms. Therefore, we reject Mr. Blackwell's argument that the relief
granted to him by the trial court below constituted the enforcement of his constitutional right
to bear arms, or that the relief granted was "related to" his supposed right to bear arms so as
to entitle him to attorney fees under Section 1988.

Therefore, because we are vacating the trial court's grant of a judgment on the pleadings and remanding for further proceedings, and because Mr. Blackwell did not establish that he was deprived of a personal constitutional right cognizable under Section 1983, he is not entitled to attorney fees under Section 1988. Accordingly, we reverse the trial court's award of attorney fees and costs in favor of Mr. Blackwell. We also exercise our discretion to deny Mr. Blackwell his request for attorney fees on appeal. Our holdings in this case pretermit all other issues raised on appeal.

## CONCLUSION

The decision of the trial court is vacated in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are to be taxed to Appellee David Scott Blackwell, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE