# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### June 22, 2004 Session

## SEILLER & HANDMAKER, L.L.P. and GLEN COHEN v. KELLY FINNELL

**An Appeal from the Circuit Court for Shelby County**
**No. 306486TD   Kay S. Robilio, Judge**

---

**No. W2002-02593-COA-R3-CV - Filed October 27, 2004**

---

This is an action to enroll a foreign judgment. A Tennessee resident was represented by a Kentucky lawyer in a Kentucky lawsuit. When the Kentucky lawyer pursued collection of his fees, the Tennessee client filed a bar complaint against him in Kentucky. The bar complaint was dismissed, and the Kentucky lawyer filed a malicious prosecution lawsuit in Kentucky against the client, and obtained a judgment. In this action, the Kentucky lawyer seeks to enroll the Kentucky judgment against the Tennessee client. The client asserts that the judgment should not be enrolled in Tennessee because it falls under the public policy exception to the full faith and credit clause of United States Constitution. The client bases this argument on Tennessee Supreme Court Rule 9, section 27.1, which prohibits any lawsuit based on a bar complaint, asserting that the enrollment of a foreign judgment based on this cause of action would violate Tennessee public policy. The trial court held that the Kentucky judgment was entitled to full faith and credit and domesticated the judgment. We affirm the decision of the trial court, finding that the enrollment of the foreign judgment does not violate Tennessee public policy.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Mark Vorder Bruegge, Jr. and Scott B. Ostrow, Memphis, Tennessee, for the appellant, Kelly Finnell.

Wendell L. Jones, Louisville, Kentucky, for the appellees, Seiller & Handmaker, L.L.P. and Glen Cohen.

## OPINION

Plaintiff/Appellee Glen Cohen ("Cohen") is a Kentucky attorney associated with the Kentucky law firm Seiller & Handmaker LLP. Cohen and his law firm represented

Defendant/Appellant Kelly Finnell ("Finnell"), a Tennessee resident and a licensed Tennessee attorney, in a 1993 Kentucky lawsuit. After a successful outcome, a dispute arose regarding Cohen's legal fees, totaling $3,800, and Finnell refused to pay.

In late November 1997, Cohen filed a lawsuit in Kentucky against Finnell for collection of his attorney's fees. In early December 1997, Finnell sent Cohen a letter demanding that Cohen voluntarily dismiss the collection lawsuit and enclosing a proposed bar complaint against Cohen, alleging unethical conduct. In the letter, Finnell told Cohen that he would refrain from filing the bar complaint and save Cohen the "embarrassment" of responding to it if Cohen would dismiss the collection lawsuit. Cohen did not dismiss the collection lawsuit, and Finnell filed the bar complaint against Cohen with the Kentucky authorities.

Finnell's bar complaint against Cohen was dismissed. Cohen then amended his Kentucky collection lawsuit against Finnell by adding a claim of malicious prosecution, asserting that the purpose of Finnell's bar complaint was to intimidate and harass Cohen into dropping his claim for fees against Finnell. Finnell then filed a second bar complaint against Cohen in Kentucky. The second complaint was likewise dismissed.

Although Finnell filed an answer in Kentucky to Cohen's original collection lawsuit, no answer was filed to the amended complaint alleging malicious prosecution. Cohen filed a motion for default judgment, and Finnell failed to appear at the hearing on the motion. Consequently, in May 1998, a default judgment was entered against Finnell, with a hearing on damages set for later that month.

Prior to the hearing on damages, Finnell paid Cohen's original $3,800 claim for attorney's fees, plus interest. After the hearing on damages, in August 1998, the Kentucky trial court entered an order making the following findings:

> 4. Cohen sent a bill for $3800.00 in attorney fees and $400.00 in mediation expenses. . . . [T]he court finds such fees and expenses reasonable. . . .
> 5. Finnell never paid the fee. On November 21, 1997, the law firm filed this lawsuit seeking compensation. On December 2, 1997, Finnell sent a proposed bar complaint against Cohen with a letter demanding Cohen voluntarily dismiss the action against him. The court finds the sole purpose of this letter and proposed bar complaint was to intimidate and harass Cohen and the law firm. Finnell followed the letter with a telephone call on December 15, 1997, again seeking to persuade Cohen to dismiss the lawsuit. Finnell testified that he anticipated Cohen would be embarrassed by the bar action.
> 6. Cohen testified that as a result of the initial complaint, as well as an amended complaint filed on February 6, 1998 after the first one was dismissed, he was upset and embarrassed.

7.   Again Finnell testified that the purpose of the second bar complaint, and the court so finds, was to cause Cohen to change his intentions of pursuing the fee litigation.  The second complaint is more egregious than the first.  While it is not uncommon for clients to complain about fees, to question the ethics of an attorney goes to the very heart of our profession.  As a licensed attorney who completes the necessary ethics courses to keep his license, Finnell knew, or should have known, of the impact on an attorney's reputation when such allegations are made.

* * *

9. One of the primary purposes of punitive damages is to deter further harmful conduct by a party.  It is clear from Finnell's conduct, toward Cohen and before the Kentucky Bar Association and this court, that he has little regard for the practice of law, reputation of lawyers and orders of the courts of Kentucky.  Finnell was willing to destroy an attorney's reputation for a mere $3800.00 fee.

Based on these findings, in addition to the $3800 in attorney's fees already paid by Finnell, the Kentucky trial court awarded Cohen $20,000 for economic loss for the time spent defending against Finnell's bar complaints, $25,000 for emotional distress, humiliation and embarrassment, and $25,000 in punitive damages.

Finnell filed a motion to alter or amend, which was denied.  Finnell then appealed the judgment to the Kentucky Court of Appeals.  In February 2001, the Kentucky Court of Appeals affirmed the trial court's order.  Finnell appealed to the Kentucky Supreme Court, and permission for his appeal was denied in August 2001.

Cohen filed a petition in the Shelby County Circuit Court in Tennessee to enroll the Kentucky judgment against Finnell.  Finnell sought to prevent the enrollment of the judgment under the public policy exception to the Full Faith and Credit Clause of the U.S. Constitution.  Finnell cited Tennessee Supreme Court Rule 9, section 27.1, which enforces the Code of Professional Responsibility, which states:

> Communications to the board, hearing committee members or disciplinary counsel relating to lawyer misconduct or disability and testimony given in the proceeding shall be absolutely privileged, and no civil lawsuit predicated thereon may be instituted against any complainant or witness

Tenn. S. Ct. R. 9, § 27.1.  Finnell argued that this rule expresses a Tennessee public policy against permitting a lawyer to file a lawsuit against one who files an ethics complaint against the lawyer. To permit the enrollment in Tennessee of a foreign judgment predicated on such a lawsuit, Finnell contended, would violate the public policy of Tennessee.  The Tennessee trial court rejected this

argument and enrolled Cohen's Kentucky judgment against Finnell. From this order, Finnell now appeals.

The facts of this case are undisputed. The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

Finnell argues that the Kentucky judgment should not be enforced because the underlying cause of action, malicious prosecution for filing a bar complaint, violates Tennessee public policy. Finnell argues that Tennessee Supreme Court Rule 9, section 27.1 grants absolute immunity from suit for one who files a bar complaint in Tennessee against a lawyer. Finnell maintains that this Rule was adopted to ensure that those utilizing the services of Tennessee lawyers will not hesitate to report unethical conduct or fear reprisal for doing so. Permitting enrollment of the Kentucky judgment, Finnell contends, would allow a Tennessee court to be used to punish a Tennessee resident for filing a bar complaint with the Kentucky Bar Association, in violation of the public policy embodied in section 27.1.

In response, Cohen argues that Tennessee permits a malicious prosecution action arising out of a false and malicious bar complaint against an attorney, citing ***Lackey v. Metropolitan Life Ins. Co.***, 206 S.W.2d 806 (Tenn. App. 1946), and maintains that Cohen's claim against Finnell would be permitted in Tennessee.[1] In the alternative, Cohen contends, even if section 27.1 is an absolute grant of immunity to one who files a bar complaint against a Tennessee lawyer, it does not rise to the level of a public policy which would prohibit giving full faith and credit to the Kentucky judgment.

Finnell correctly states the rule of law that "Tennessee courts are not obligated to give full faith and credit to any judgment of a state which we hold to be violative of Tennessee's public policy or the Federal Constitution." ***Aqua Sun Invs., Inc. v. Henson***, 1993 WL 382230 *2 (Tenn. Ct. App. Sept. 30, 1993). Finnell acknowledges, however, that a party who invokes the public policy exception must identify the public policy that is offended by the foreign judgment and has a "'stern and heavy' burden." ***Id***. (quoting ***Biogen Distrib., Inc. v. Tanner***, 842 S.W.2d 253, 256 (Tenn. Ct. App. 1992)).

Tennessee public policy is found in its "constitution, statutes, judicial decisions, and common law." ***Alcazar v. Hayes***, 982 S.W.2d 845, 851 (Tenn. 1998). "Although the determination of public policy is primarily a function of the legislature, the judiciary may determine public policy in the absence of any constitutional or statutory declaration." ***Id.*** (quoting ***Crawford v. Buckner***, 839 S.W.2d 754, 759 (Tenn.1992)).

Finnell cites ***In re Riggs*** as an example of a foreign judgment denied full faith and credit by Tennessee courts based on the public policy exception. ***In re Riggs***, 612 S.W.2d 461 (Tenn. Ct. App. 1980). In ***Riggs***, a child was born out of wedlock. The mother released her parental rights so that

---

[1]Finnell contends that, in light of section 27.1, ***Lackey*** is no longer good law.

the child could be adopted, and falsely denied any knowledge of the father's name or his whereabouts. Consequently, the biological father did not receive notice of the child's adoption by a couple in Georgia. The adoptive couple moved to Tennessee, and in Tennessee proceedings the biological father sought custody of the child, arguing that the Georgia adoption decree should not be given full faith and credit in Tennessee because the father had no notice and no right to a hearing before his parental rights were terminated. The Tennessee Court of Appeals refused to honor the Georgia judgment terminating the father's parental rights because it was repugnant to "Tennessee's interest in sustaining the father-child relationship and protecting the family unit." *Aqua Sun Inv., Inc.*, 1993 WL 382230 (Tenn. Ct. App. 1993) (citing *In re Riggs*, 612 S.W.2d 461 (Tenn. Ct. App. 1980)). Finnell asserts that Tennessee Supreme Court Rule 9, section 27.1 evidences the public policy of protecting the integrity of the legal system, and that Tennessee's interest in protecting its legal system is as important as the interests underlying the public policy found in *Riggs*.

Indeed, in *In re Estate of Davis*, No. M2003-02614-COA-R3-CV, 2004 WL 1950729 (Tenn. Ct. App. August 3, 2004), this Court refused to honor an antenuptial agreement executed in Florida because the agreement violated Tennessee public policy. In Tennessee, an antenuptial agreement is enforceable only if it was entered into "freely, knowledgeably and in good faith without exertion of duress or undue influence upon either spouse." *Id.* at *3 (citing Tenn. Code Ann. § 36-3-501 (2001)). Thus, the parties to an antenuptial agreement must fully and fairly disclose their financial condition prior to execution of the agreement if the agreement is later to be enforced, regardless of whether the marriage ends by divorce or by the death of one of the spouses. In contrast, under Florida law, full and fair disclosure of both parties' financial circumstances is required only if the marriage ends in divorce. If the marriage ends by the death of one of the spouses, under Florida law, the parties to the antenuptial agreement are not required to give full and fair disclosure of their financial condition prior to execution of the agreement in order for the agreement to be enforceable in the probate court. *Id.* at *4 (citing Fla. Stat. Ann § 732.702 (2002)). In *Davis*, the surviving spouse signed an antenuptial agreement that waived the elective share of her husband's estate even though, at the time the agreement was executed, she was not aware of his financial condition. *Id.* at *7. After he died, the Tennessee probate court held that the antenuptial agreement was enforceable. This Court reversed, and held that the requirement of full and fair disclosure for antenuptial agreements rises to the level of public policy due to the "unique and confidential nature of the marital relationship" and that this policy "promote[s] the highest degree of fiduciary duty between spouses." *Id.*

Thus in *Davis*, the husband's heirs sought to enforce an antenuptial agreement in derogation of the wife's historic statutory elective share. The Tennessee legislature enacted a statute providing that, in order to enforce such an agreement, the parties to the agreement must have fulfilled their fiduciary duty to one another to fully disclose their circumstances. Thus, this Court found that, given the unique nature of the marital relationship, the statute enacted by the Tennessee legislature rose to the level of a statement of public policy. Likewise, in *Riggs*, given the fundamental nature of the parental relationship, enforcing a judgment that terminated the father's parental rights with no notice and no right to a hearing was repugnant to the State's strong interest in protecting the father-child relationship.

Finnell argues that the Supreme Court Rule represents public policy because the Tennessee Legislature empowered the Tennessee Supreme Court to make rules governing the practice of law in Tennessee. In response, the Supreme Court promulgated the Rules of Disciplinary Enforcement to enforce the code of professional responsibility. However, in ***Crews v. Buckman Labs.***, the Tennessee Supreme Court specifically declined to rule "that every provision of the Code of Professional Responsibility reflects an important public policy." ***Crews v. Buckman Labs.,*** 78 S.W.3d 852, 865 (Tenn. 2002). As such, Finnell must meet the burden of showing why section 27.1 reflects public policy.

Certainly, both Tennessee and Kentucky have a strong interest in protecting the integrity of their respective legal systems. Both states have regulations that govern immunity from prosecution related to bar complaints. Tenn. S. Ct. R. 9 § 27.1; Ky. Sup. Ct. Rule 3.160. However, the relevant Tennessee rule is much broader in scope than the corresponding Kentucky rule, which obviously permits the filing of a malicious prosecution lawsuit against one who files a bar complaint against an attorney. The mere recognition of a Kentucky judgment, which is based on a law more narrow in scope than the Tennessee counterpart, does not in and of itself violate Tennessee public policy. Indeed, the facts of this case illustrate the competing interests sought to be balanced by both Tennessee and Kentucky. As noted by Finnell, permitting an attorney to respond to a bar complaint against him by filing a malicious prosecution lawsuit may deter one with a legitimate complaint from filing it, for fear of reprisal. As demonstrated by Finnell's conduct, however, such immunity could be utilized by one with impure motives to file a false and malicious bar complaint against a lawyer, leaving the lawyer with no recourse. Thus, in balancing the competing interests, Tennessee and Kentucky have found the balance in differing disciplinary rules. Moreover, the interests involved, while important indeed, do not, as in ***Davis***, involve an interest such as the fiduciary duty between spouses at the heart of the marital relationship, or the parental rights of a biological father. Therefore, assuming *arguendo* that section 27.1 would prohibit in Tennessee the malicious prosecution claim filed by Cohen against Finnell, we must nevertheless conclude that enrollment of the Kentucky judgment does not violate Tennessee public policy.

This Court has previously held that "a state court must give full faith and credit to a monetary judgment rendered in a court of another state, even though the enforcing forum might not recognize the underlying cause of action." ***Mirage Casino-Hotel v. Pearsall,*** No. 02A01-9608-CV-00198, 1997 WL 275589, at *5 (Tenn. Ct. App. May 27, 1997). The facts of this case fall squarely under this holding.

The decision of the trial court is affirmed. Costs are taxed against Defendant/Appellant Kelly Finnell, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE