# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 18, 2013 Session

# BANCORPSOUTH BANK
## v.
# DAVID J. JOHNSON, EUGENE GIBSON, AND CHERYL GIBSON

**Appeal from the Circuit Court of Shelby County**
**No. CT-003553-11    Judge Jerry Stokes**

---

**No. W2012-00452-COA-R3-CV - Filed July 16, 2013**

---

This appeal involves the enrollment of a foreign judgment. The plaintiff creditor sought to enroll in Tennessee a deficiency judgment obtained in Arkansas. The defendant debtors contended that the Arkansas judgment should not be given full faith and credit in Tennessee, alleging *inter alia* the fraud exception to the Full Faith and Credit Clause of the constitution. The trial court enrolled the Arkansas judgment, and the debtors appeal. Discerning no error, we affirm.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Harold G. Walter, Memphis, Tennessee, for Defendant/Appellants, Eugene Gibson and Cheryl Gibson

Douglas M. Alrutz and Amber D. Floyd, Memphis, Tennessee for Plaintiff/Appellee, BancorpSouth Bank

# OPINION

## FACTS AND PROCEEDINGS BELOW

The facts in this case are generally undisputed. In 2006, Defendant David J. Johnson[1] and Defendant/Appellants Eugene and Cheryl Gibson ("the Gibsons") guaranteed a note payable to Plaintiff/Appellee BancorpSouth Bank ("BancorpSouth) in the amount of $1,027,483.15. The note was secured by real property in West Memphis, Arkansas.

The note later went into default. BancorpSouth filed a lawsuit against the note guarantors, Johnson and the Gibsons, in the Circuit Court of Crittenden County, Arkansas. In October 2010, BancorpSouth obtained a judgment against Johnson and the Gibsons, jointly and severally, in the amount of $1,004,681.24 plus interest, costs, and attorney fees. BancorpSouth also obtained a decree of foreclosure on the real property securing the note, directing a judicial foreclosure sale in the event that the judgment was not satisfied by a certain date.[2]

The Arkansas judgment against Johnson and the Gibsons was not satisfied by the date in the decree of foreclosure. Consequently, in December 2010, the real property securing the note went to auction. At the auction, BancorpSouth purchased the property for $190,650. Apparently the same day, the Arkansas court entered an order approving the commissioner's deed on the property; the sum of $190,650, representing the proceeds of the foreclosure sale, was credited against the judgment, reducing the outstanding judgment to $868,984.24. The appellate record does not reflect any appeal of this order or other action by the Arkansas trial court.

In August 2011, BancorpSouth filed an action in the Circuit Court of Shelby County, Tennessee ("trial court") to enroll the Arkansas judgment against Johnson and the Gibsons, pursuant to Tennessee Code Annotated § 26-6-101, *et seq*.[3] In their answer, the Gibsons

---

[1]David J. Johnson is not a party to this appeal. The record indicates that, at some point, he filed Chapter 7 bankruptcy.

[2]In Arkansas, there are two kinds of foreclosure sales: judicial and non-judicial foreclosures. Judicial foreclosures are governed by Arkansas Code Annotated §§ 18-49-104, -105. Section 18-49-105 provides that, "If the whole of mortgaged property does not sell for a sum sufficient to satisfy the amount due, an execution may be issued against the defendant as on ordinary judgments."

[3]To be awarded full faith and credit in Tennessee, Section 26-6-104 states in pertinent part that:
(a) A copy of any foreign judgment authenticated in accordance with the acts of congress

(continued...)

asserted *inter alia* that the Tennessee trial court should refuse to enroll the Arkansas judgment or give it full faith and credit because, prior to the foreclosure sale, BancorpSouth had obtained an appraisal of the subject real property in an amount that far exceeded the bid price for which BancorpSouth eventually bought the property. In light of this, the Gibsons argued that BancorpSouth procured the real property by fraud, misconduct, and irregularity, and that enforcement of the Arkansas judgment would violate the public policy of the State of Tennessee.

In November 2011, BancorpSouth filed a motion to enforce the Arkansas judgment. In response, the Gibsons moved to stay the enforcement of the Arkansas judgment, reciting many of the same allegations made in their answer. They also filed a motion to compel discovery from BancorpSouth, seeking information on the bank's purchase of the foreclosed property.

In February 2012, the trial court granted BancorpSouth's motion to enforce the judgment. It held that Tennessee should give full faith and credit to the Arkansas judgment as "there is no basis to refrain from granting [BancorpSouth's] Motion to Enforce Foreign Judgment." The Gibsons now appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Gibsons raise the following issues:

(1) Does the Tennessee Court have to recognize and give full faith and credit to a foreign judgment that was procured by fraud, misconduct and irregularity?

(2) Does the Tennessee Court have to recognize and give full faith and credit to a foreign judgment when doing so would violate the strong public policy of Tennessee?

---

[3](...continued)
or the statutes of this state
(b) The clerk shall treat the foreign judgment in the same manner as a judgment of a court of record of this state.
(c) A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of record of this state and may be enforced or satisfied in like manner.

Tenn. Code Ann. § 26-6-104(a)-(c)(2010).

(3) Does the action of the Tennessee Legislature in enacting Tennessee Code Annotated, Section 35-5-118(b) set the public policy of Tennessee?

(4) Should the trial court have granted [the] Gibsons' Motion to Compel Discovery prior to ruling on the matter in order to give [the] Gibsons the opportunity to discover and produce evidence of BancorpSouth's fraud and misconduct?

"[W]hether to grant full faith and credit to a foreign judgment is a question of law. It is reviewed *de novo* upon the record with no presumption of correctness of the trial court's conclusions of law." *Minor Miracle Productions, LLC v. Starkey*, No. M2011-00072-COA-R3-CV, 2012 WL 112593, at *4; 2012 Tenn. App. LEXIS 30, at *12-13 (Tenn. Ct. App. Jan. 12, 2012); *W&T, Inc. v. Ham*, No. M2006-01617-COA-R3-CV, 2009 WL 225256, at *3; 2009 Tenn. App. LEXIS 63, at *10-11 (Tenn. Ct. App. Jan. 29, 2009).

"Decisions regarding discovery issues address themselves to a trial court's discretion . . . . Accordingly, the appellate courts must review these decisions using the 'abuse of discretion' standard of review." *Boyd v. Comdata Network, Inc.* 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002) (citations omitted).

## ANALYSIS

The Full Faith and Credit Clause of the United States Constitution states: "Full Faith and Credit shall be given in each state to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. Expounding on the Full Faith and Credit Clause, Chief Justice John Marshall stated:

> [T]he judgment of a state court should have the same credit, validity, and effect in every other court in the United States, which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaed [sic] in any other court in the United States.

*Hampton v. M'Connel*, 3 Wheat. 234, 235; 16 U.S. 234, 235 (1818). In the wake of *Hampton* and its progeny, "it is now well established that the full faith and credit clause of the federal constitution requires that the judgment of a state court, which had jurisdiction of the parties and the subject matter in suit, be given the same credit, validity and effect in the courts of every other state and that such judgment be equally conclusive upon the merits in the courts of the enforcing states." *Mirage Casino Hotel v. J. Roger Pearsall*, No.

02A01-9608-CV-00198, 1997 WL 275589, at *3; 1997 Tenn. App. LEXIS 367, at *7 (Tenn. Ct. App. May 27, 1997). The Full Faith and Credit Clause of the Federal Constitution was a key component of the Founding Fathers' efforts to form a unified nation, rather than simply a confederation of independent sovereign states:

> Full faith and credit embodies an important federal policy. It is designed to give the United States certain of the benefits of a unified nation. As stated by Mr. Justice Stone in *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 276-7 (1935):
>
> > "The very purpose of the full faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin."

*Blackwell v. Haslam,* No. M2012-01991-COA-R3-CV, 2013 WL 3379364, at *6; 2013 Tenn. App. LEXIS 436, at *16-17 (Tenn. Ct. App. June 28, 2013) (quoting Restatement (Second) of Conflict of Laws § 103 cmt. b (2012)).

Notwithstanding the importance of the principle behind the constitutional provision, "the United States Supreme Court has recognized at least three exceptions to the full faith and credit clause." *Mirage Casino Hotel* , 1997 WL 275589, at *4; 1997 Tenn. App. LEXIS 367, at *10. Specifically, a forum state may decline to accord full faith and credit to the judgment or public act of another state if it is (1) void due to a lack of personal or subject-matter jurisdiction, (2) based upon fraud, or (3) "where enforcement of the judgment would violate the public policy of the forum state." *Mirage Casino Hotel* , 1997 WL 275589, at *4; 1997 Tenn. App. LEXIS 367, at *10-11 (citations omitted). Tennessee courts have recognized and adopted all three of these exceptions. *See Trustmark Nat'l Bank v. Miller*, 209 S.W.3d 54, 57 (Tenn. Ct. App. 2006); *Four Seasons Gardening & Landscaping, Inc. v. Crouch*, 688 S.W.2d 439, 445 (Tenn. Ct. App. 1984); *In re Riggs*, 612 S.W.2d 461, 465 (Tenn. Ct. App. 1980).

While Tennessee recognizes these three exceptions to full faith and credit, a party who seeks to show that a foreign judgment should not be enforced in Tennessee must meet a "stern and heavy" burden. *Longphre v. Longphre*, No. E2006-00323-COA-R3-CV, 2007 WL 1214965, at *4; 2007 Tenn. App. LEXIS 247, at *13 (Tenn. Ct. App. Apr. 25, 2007) (quoting

***Coastcom, Inc. v. Cruzan***, 981 S.W.2d 179 (Tenn. Ct. App. 1998) (citing ***Dement v. Kitts***, 777 S.W.2d 33, 36 (Tenn. Ct. App.1989)); ***see also Seiller & Handmaker, LLP v. Finnell***, 165 S.W.3d 273, 277 (Tenn. Ct. App. 2004). Important to this appeal, "[t]he factual issues underlying the foreign judgment may not be the basis of an inquiry to deny the foreign judgment full faith and credit." ***First State Bank of Holly Springs, Miss. v. Wyssbrod,*** 124 S.W.3d 566, 573 (Tenn. Ct. App. 2003) (citing ***Benham v. Fisher***, 650 S.W.2d 759, 760 (Tenn. Ct. App. 1983)).

In this appeal, the Gibsons assert two of the three exceptions to full faith and credit, the fraud exception and the public-policy exception. We consider first their assertion that the Arkansas judgment should not be accorded full faith and credit on the basis of fraud, and then consider the public-policy exception.

The Gibsons allege that BancorpSouth was aware of the appraised value of the real property that secured the subject note and, despite this knowledge, bid approximately four times less than the appraisal value, resulting in a successful bid that BancorpSouth "knew to be patently and unfairly so below the fair market value of the property as to shock the conscience." They contend that the trial court erred in denying their motion to compel discovery, because such discovery is necessary for them to prove this alleged fraud. The Gibsons assert that BancorpSouth's fraudulent misconduct directly affected the amount of the Arkansas judgment to be enrolled in Tennessee, so Tennessee should decline to give full faith and credit to the Arkansas judgment.

While it is doubtful that the conduct attributed to BancorpSouth by the Gibsons can be termed "fraud," we assume *arguendo* that it is indeed fraudulent. Even assuming this, it is clear that BancorpSouth's alleged misconduct, and the discovery the Gibsons seek, relate to "factual issues underlying the foreign judgment." ***Id.***

Generally, to deny full faith and credit on the basis of fraud, there must be allegations of extrinsic fraud, that is, fraud that is collateral to questions which were either determined or which could have been determined in the underlying action. Extrinsic fraud is contrasted with intrinsic fraud, which pertains to an issue involved in the underlying action or where the acts allegedly constituting fraud were or could have been litigated. ***See*** E. H. Schopler, Comment Note, *Fraud as defense to action on judgment of sister state*, 55 A.L.R.2d 673 (1957). ***See also Florida National Bank v. Satterfield***, 367 S.E.2d 358, 360 (N.C. 1988) ("Although extrinsic fraud is a defense to an action to recover on a foreign judgment, intrinsic fraud is not."); ***Sterns v. Sterns***, 187 N.W.2d 733, 735 (Iowa 1971); ***DOCRX, Inc. v. EMI Services of NC, LLC***, 738 S.E.2d 199, 201 (N.C. Ct. App. 2013); ***In re Estate of O'Keefe***, 833 So.2d 157, 161 (Fla. Dist. Ct. App. 2002); ***Bankers Trust Co. v. Braten***, 455

S.E.2d 199, 200-01 (S.C. Ct. App. 1995); ***Colodny v. Dominion Mortg. & Realty Trust***, 236 S.E.2d 917, 918 (Ga. Ct. App. 1977). An early Tennessee case indicates that Tennessee is in line with the cases holding that extrinsic fraud is the only type of fraud that can serve as a basis for declining to give full faith and credit to the judgment of a sister state. ***See Turley v. Taylor***, 65 Tenn. 376, 382-83 (Tenn. 1873).[4] Tennessee courts have explained the difference between extrinsic and intrinsic fraud: "[E]xtrinsic fraud 'consists of conduct that is extrinsic or collateral to the issues examined and determined in the action,'. . . while intrinsic fraud is fraud within the subject matter of the litigation, such as forged documents produced at trial or perjury by a witness." ***Schorr v. Schorr***, No. 02A01-9409-CH-00217, 1996 WL 148613, at *3; 1996 Tenn. App. LEXIS 197, at *8 (Tenn. Ct. App. Mar. 29, 1996) (quoting ***Thomas v. Dockery***, 232 S.W.2d 594, 598 (Tenn. 1950) (citations omitted) (distinction between extrinsic and intrinsic fraud in context of motion to set aside under Tenn. R. Civ. P. 60.02)). Examples of extrinsic fraud are:

> Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat; or, being regularly employed, corruptly sells out his client's interests.

***Schorr,*** 1996 WL 148613, at *3; 1996 Tenn. App. LEXIS 197, at *8 (quoting ***Noll v. Chattanooga Co.***, 38 S.W. 287, 291 (Tenn. Ct. App. 1896) (citing ***U.S. v. Throckmorton***, 98 U.S. 65, 66 (1878)).

The Gibsons accuse BancorpSouth of purported fraudulent bidding on the real property that secured the note the Gibsons guaranteed. These are allegations of intrinsic fraud, related to "factual issues underlying the [Arkansas] judgment." These are claims that could have been

---

[4]The ***Turley*** Court stated:

> What, then, is the principle on which a Court of Chancery will enjoin a judgment rendered at law in this State, where the court had jurisdiction of the person and subject matter of the controversy? We take it to be clear that a party cannot impeach such a judgment unless he can show it was obtained by the fraud of the other party, for it is the obtaining of the judgment that is complained of, and not the question of an independent defense that might be made to the original cause of action had no such judgment been rendered as the judgment in this case, as we have seen is conclusive, unless it can be set aside on the grounds alleged, as having been obtained by the fraud of the plaintiff, or by surprise in the legal sense of that term.

***Turley v. Taylor***, 65 Tenn. 376, 382-83 (Tenn. 1873).

made in the underlying Arkansas trial court proceedings or in an appeal of the Arkansas judgment. *See, e.g., Simmons First Nat. Bank v. Middleton*, 379 S.W.3d 518, 521 (Ark. Ct. App. 2010) (appellant asserted that sales price in judicial foreclosure sale grossly inadequate); *Campbell v. Campbell*, 725 S.W.2d 585, 587 (Ark. Ct. App. 1987) (same). As such, even if the Gibsons were permitted the discovery they seek and their allegations against BancorpSouth were proven, the type of fraud they assert is not a basis to deny full faith and credit to the Arkansas judgment. *See First State Bank of Holly Springs, Miss.,* 124 S.W.3d at 573 (citation omitted).

In the alternative, the Gibsons argue that the trial court below erred in declining to apply the "public-policy exception" to the Full Faith and Credit Clause. They contend that Tennessee Code Annotated § 35-5-118[5] and cases applying it demonstrate Tennessee's public policy against enforcing a deficiency judgment if the sale price for property securing the debt is inadequate and so far below the market price as to shock the conscience of the Court.

Under the public-policy exception to full faith and credit, "Tennessee courts are not obligated to give full faith and credit to any judgment of a state which we hold to be violative of Tennessee's public policy or the Federal Constitution." *Seiller & Handmaker, LLP*, 165 S.W.3d at 276-77 (quoting *Aqua Sun Invs., Inc. v. Henson*, No. 02A01-9302-CH-00048,

---

[5]Section 35-5-118 provides in relevant part as follows:

(a) In an action brought by a creditor to recover a balance still owing on an indebtedness after a . . . foreclosure sale of real property secured by a deed of trust or mortgage, the creditor shall be entitled to a deficiency judgment in an amount sufficient to satisfy fully the indebtedness.

(b) In all such actions, absent a showing of fraud, collusion, misconduct, or irregularity in the sale process, the deficiency judgment shall be for the total amount of indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale. The creditor shall be entitled to a rebuttable prima facie presumption that the sale price of the property is equal to the fair market value of the property at the time of the sale.

(c) To overcome the presumption set forth in subsection (b), the debtor must prove by a preponderance of the evidence that the property sold for an amount materially less than the fair market value of property at the time of the foreclosure sale. If the debtor overcomes the presumption, the deficiency shall be the total amount of the indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale as determined by the court. . . .

Tenn. Code Ann. § 35-5-118 (2012).

1993 WL 382230, at *2; 1993 Tenn. App. LEXIS 639, at *4 (Tenn. Ct. App. Sept. 30, 1993)).  This Court has quoted the following description of the public-policy exception to the Full Faith and Credit Clause:

> A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve an improper interference with important interests of the sister State.

*Blackwell,* 2013 WL 3379364, at *6; 2013 Tenn. App. LEXIS 436, at *18 (quoting Restatement (Second) of Conflict of Laws § 103 (2012)). The principle of giving full faith and credit to the judgments of sister states will "almost invariably" outweigh the interest of an individual state; the public-policy exception to full faith and credit is applied only on "extremely rare occasions." *Blackwell,* 2013 WL 3379364, at *6-7; 2013 Tenn. App. LEXIS 436, at *19 (quoting  Restatement (Second) of Conflict of Laws § 103 cmts. a. and b.).

This Court has stated that it could find "no strong public policy of this state that would be implicated in an attempt to enforce a judgment on a debt." *See Tareco Props. v. Morriss*, No. M2002-02950-COA-R3-CV, 2004 WL 2636705, at *9 n.18; 2004 Tenn. App. LEXIS 774, at *34 n. 18 (Tenn. Ct. App. Nov. 18, 2004).  In this case, the Gibsons cloak their argument in terms of "public policy," but they actually simply seek to resist enforcement of a debt by asserting in Tennessee defenses that could have - and should have- been asserted in the course of the underlying Arkansas proceedings.  The important policies that underlie Full Faith and Credit would be greatly undermined by permitting a judgment debtor on a foreign judgment to relitigate the "factual issues underlying the foreign judgment."  *First State Bank of Holly Springs, Miss.,* 124 S.W.3d at 573 (citing *Benham*, 650 S.W.2d at 760).

We find all of the Gibsons' arguments on appeal to be without merit.  We find no error in the trial court's decision, and so affirm.  All other issues raised on appeal are pretermitted by this decision.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are assessed against Defendant/Appellants Eugene Gibson and Cheryl Gibson, and their surety if applicable, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE